IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
COLUMBIA DIVISION

| | | |
|---|---|---|
| MONICA D. MORGAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:04-0046 |
| | ) | Judge Nixon |
| MICHAEL J. ASTRUE,[1] | ) | Magistrate Judge Griffin |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Pending before the Court is Plaintiff's Motion for Judgment on the Administrative Record ("Plaintiff's Motion") (Doc. No. 15). Defendant ("Defendant" or "Commissioner") has filed a Response in Opposition to Plaintiff's Motion, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. (Doc. No. 17). Magistrate Judge Griffin ("Magistrate Judge") has issued a Report and Recommendation ("Report") that Plaintiff's Motion be denied and that the decision of the Commissioner be affirmed. (Doc. No 20). Plaintiff timely filed Objections to the Magistrate Judge's Report. (Doc. No. 27). Upon review of the Magistrate Judge's Report and for the reasons stated below, the Court **ADOPTS** the Magistrate Judge's Report, and **DENIES** Plaintiff's Motion.

I. BACKGROUND

    A. **Procedural Background**

On September 15, 1997, Plaintiff filed an application for Disability Insurance Benefits

---

[1] Michael J. Astrue is automatically substituted for his predecessor Jo Anne Barnhart as Commissioner of Social Security pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning October 15, 1996. (Tr. 255-57, 427-29). Plaintiff alleged the following disabling conditions: (1) Ehlers-Danlos Syndrome ("EDS");[2] (2) asthma; (3) a learning disability; and (4) a broken ankle in 1995. (Tr. 266). Plaintiff's claim was denied initially and upon reconsideration. (Tr. 223-27, 243, 432, 439).

On December 3, 1999, a hearing was held before Administrative Law Judge ("ALJ") Robert C. Haynes. (Tr. 41). The ALJ delivered an unfavorable decision on January 28, 2000. (Tr. 46-53). Plaintiff petitioned for a review of that decision before the Appeals Council, and the Appeals Council remanded the case on October 16, 2001. (Tr. 61-64).

On April 30, 2002, Plaintiff's second hearing was held before the ALJ. (Tr. 26). Plaintiff amended her alleged onset date during this hearing to October 11, 1998.[3] (Tr. 524). The ALJ issued an unfavorable decision on July 9, 2002. (Tr. 17-24). The Appeals Council denied Plaintiff's request for review of that decision on March 26, 2004 (Tr. 9-11), and the ALJ's decision became the final decision of the Commission.

Following the Commission's decision, Plaintiff filed a timely civil action in this Court seeking judicial review of the administrative decision. Morgan v. Soc. Sec. Admin., No. 1:04-0046. On May 20, 2009, Magistrate Judge Griffin recommended that Plaintiff's Motion be denied. (Doc. No. 20, at 1). Plaintiff timely objected. (Doc. No. 27).

Plaintiff raises three (3) objections to the Magistrate Judge's Report: (1) that the ALJ

---

[2] Ehlers-Danlos Syndrome is a genetic disorder, which causes "hyperextensible skin and joints, easy bruisability, friability of tissue with bleeding and poor wound healing, calcified subcutaneous spheroids and pseudotumors, and cardiovascular, gastrointestinal, orthopedic, and ocular defects." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, 1634 (27th ed., 1988) (hereinafter "DORLAND'S").

[3] While Plaintiff filed for both DIB and SSI, Plaintiff has since couched her claim in terms of DIB only.

-2-

gave too much weight to the treating physician rule;[4] (2) that the ALJ did not give enough weight to the opinions of the consulting physicians; and (3) that the ALJ erred in concluding that Plaintiff's subjective complaints of pain did not preclude her from working. (Id.).

### B. Factual Background

The Court adopts that portion of the Magistrate Judge's Report that addresses Plaintiff's medical evidence, vocational history, and the relevant testimony at both of Plaintiff's administrative hearings. (Doc. No. 20, at 3-15).

## II. STANDARD OF REVIEW

This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. Jones v. Sec'y of Health & Human Servs., 945 F.2d 1365, 1369 (6th Cir. 1991). The Court's review of the portions of the Report to which Plaintiff objects is *de novo*. 28 U.S.C. § 636(b). The purpose of this review is to determine: (1) whether substantial evidence exists in the record to support the Commissioner's decision; and (2) whether any legal errors were committed in the process of reaching that decision. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986).

The standards of this Court's review are understood as follows. First, "substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999) (citing

---

[4] Under the treating physician rule, see Soc. Sec. Rul. 96-2p, 1996 WL 374188 (July 2, 1996), Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004), an ALJ is generally required to give "controlling weight" to the medical opinion of a treating physician, as compared to the medical opinion of a non-treating physician, if the opinion of the treating source is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

-3-

Richardson v. Perales, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (citing Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the ALJ must stand if substantial evidence supports the conclusion reached. Her, 203 F.3d at 389 (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the Commissioner did not consider the record as a whole, however, the Commissioner's conclusion is undermined. Hurst v. Sec'y of Health & Human Servs., 753 F.2d 517, 519 (6th Cir. 1985) (citing Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980)).

Second, "legal errors" requires determining whether the Commissioner applied the correct legal standard to the evaluation. See Preslar v. Sec'y of Health & Human Servs., 14 F.3d 1107, 1113 (6th Cir. 1994). Generally, the Commissioner's determination is entitled to deference by the court. See Whiteside v. Sec'y of Health & Human Servs., 834 F.2d 1289, 1292 (6th Cir. 1987); Merz v. Sec'y of Health & Human Servs., 969 F.2d 201, 203 (6th Cir. 1992); Salamackis v. Comm'r of Soc. Sec., 221 F.3d 828, 832 (6th Cir. 2000).

### III. PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT

**A. Plaintiff Objects to the Magistrate Judge's Conclusion that the ALJ Did Not Err in Failing to Give Appropriate Deference to the Opinions of Treating and Non-Treating Medical Sources.**

Plaintiff objects to the Magistrate Judge and the ALJ's finding that there was substantial

-4-

evidence to find Plaintiff is not disabled. (Id.). Plaintiff contends the ALJ erred in failing to give appropriate deference to the opinion of treating and non-treating medical sources. (Doc. No. 27).

### 1.     *Plaintiff's Objective Medical Proof*

First, Plaintiff argues that the ALJ selectively read and incorrectly deduced from the record that Plaintiff's pain is not disabling. (Doc. No. 27, at 1). Pain can only be considered in determining disability if there is objective medical proof establishing the presence of disabling pain or objective medical proof which could reasonably be expected to result in disabling pain. Duncan v. Sec'y of Health & Human Servs, 801 F.2d 847, 853 (6th Cir. 1986) (adopting the statutory standard contained in the Disability Benefits Reform Act of 1984). Plaintiff argues that the ALJ incorrectly applied the legal standard. (Doc. No. 27, at 1). Plaintiff points to objective evidence in the record regarding her medical history, which includes diagnoses and treatment for: (1) EDS; (2) a surgically-fused ankle;[5] (3) asthma; (4) depression; and (5) a learning disability. (Doc. No. 16, at 3-15). The ALJ found and the Magistrate Judge agreed that Plaintiff's EDS, surgically-fused right ankle, and depression were severe impairments, but that these impairments did not meet or medically equal a Listed Impairment. (Tr. 23). The ALJ further found that Plaintiff could not return to her past relevant work as a fast food service worker, but upon the testimony of a vocational expert there were jobs available in the economy that Plaintiff could perform despite her limitations. (Tr. 23-24; Doc. No. 20, at 18-19).

### 2.     *Plaintiff's Treating Physician*

---

[5] Plaintiff was injured in a motor vehicle accident on Oct. 11, 1998, resulting in a fractured ankle and severe skin trauma aggravated by her EDS. (Tr. 411-15, 493).

Plaintiff argues that the ALJ placed too much weight on the opinion of her treating physician, Dr. Johnson, and not enough on the opinions of the consulting physicians, Drs. Clinton, Davis, Rinehart, and Tiller. (Doc. No. 27, at 1-3). However, evidence from treating physicians is entitled to great weight and deference, see Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007), whereas the opinion of a consulting physician is not substantial evidence if contrary to the opinion of a treating physician. See Miracle v. Celebrezze, 351 F.2d 361, 378-79 (6th Cir. 1965). In fact, if the Secretary rejects the opinion of a treating physician, he must articulate good cause for doing so. See Bogle v. Sullivan, 998 F.2d 342, 347-48 (6th Cir. 1993). Here, Plaintiff argues that Dr. Johnson treated her only for an ankle fracture, and therefore his testimony is given too much weight in light of her other ailments. (Doc. No. 17, at 2). However, Dr. Johnson treated Plaintiff for her ankle fracture while cognizant of Plaintiff's EDS, as noted in Plaintiff's medical records. (Tr. 116). Accordingly, his treatment reflected consideration that Plaintiff's ankle pain and recovery were aggravated by her EDS. (See Tr. 199 (stating that Plaintiff has pain from EDS)).

Furthermore, the substantial evidence standard requires only evidence that reasonable minds could accept as adequate to support the conclusion, not a preponderance of the evidence. See Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999); Bell v. Comm'r of Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996). Yet Plaintiff argues that the Magistrate Judge and the ALJ place too much weight on Dr. Johnson's records which state that Plaintiff "steadily progressed from the date of the October 1998 [motor vehicle accident]." (Doc. No. 27, at 1-2 (referencing Tr. 19-20)). Plaintiff argues that this statement was taken out of context because, "Dr. Johnson never expressed an opinion as to [Plaintiff]'s ability to work, her residual

functional capacity, or her specific degree of pain . . . [nor does he] specifically rebut any of the other opinions or findings of record." (Id., at 2).  It is not unreasonable for the ALJ to have concluded, however, that Dr. Johnson was alluding to the healing process following Plaintiff's fracture, skin grafts, and surgeries.  In addition, Plaintiff's medical records further indicate that her condition was improving, especially where Dr. Johnson's noted that Plaintiff told him the pain in her ankle was improving. (Tr. 199).

Dr. Johnson was in the best position to objectively assess Plaintiff's pain, given his long-standing relationship with Plaintiff throughout her ankle injury.  Following Plaintiff's complaints of diffuse pain in 2000, Dr. Johnson did not alter her treatment plan, and instead ordered only periodic follow-up examinations.  (Tr. 199).   Reasonable minds could conclude that Dr. Johnson did not find Plaintiff's subjective complaints of pain compelling enough to continue an aggressive treatment plan as one might expect from someone suffering disabling chronic pain.

### *3.        Plaintiff's Consulting Physicians*

The opinions of consulting physicians are given less deference by the court.  See supra, at 6, Baker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994).  Although the ALJ must give a good cause explanation for disregarding the opinion of a treating physician, there is no such rule if he rejects the contrary opinion of a consulting physician.  See Wilson, 378 F.3d 541, 544-45; see also Stafford v. Barnhart, 457 F. Supp.2d 831, 838 (M.D. Tenn. 2006) (holding that the contrary opinion of a consulting physician did not justify the rejection of the opinion of a treating physician).

The opinion of a consulting physician is not substantial evidence if contrary to the opinion of a treating physician.  See Miracle, 351 F.2d 361, 378-79.  However, Plaintiff argues

-7-

that the opinions of consulting physicians—Drs. Clinton, Davis, Rhinehart, and Tiller—should have been afforded greater weight than that of Plaintiff's treating physician, Dr. Johnson. (Doc. No. 27). Unlike Dr. Johnson, however, the consulting physicians did not establish an ongoing treatment relationship with Plaintiff. See 20 CFR § 404.1502. In addition, their findings are not supported by the record for the following reasons.

First, Dr. Rhinehart noted Plaintiff's primary complaint was her unsteady gait "plus [Plaintiff] states no one will hire her." (Tr. 201-02). Plaintiff did not report any complaints of pain to Dr. Rhinehart. (See id.). Yet Dr. Rhinehart found that Plaintff had marked physical limitations—he determined she could lift no more than ten pounds, sit for no longer than two hours, and stand for no longer than five minutes. (Id.). Dr. Rhinehart drew this conclusion based solely on a general examination and the observation that Plaintiff is unsteady on her feet. Nothing in his report indicates that he conducted any assessment of Plaintiff's ability to sit, stand, or lift objects. (See id.). Nor did he test her for chronic pain. (See id.). Thus, Dr. Rhinehart's report of marked physical limitations was not supported by his findings, and the ALJ correctly disregarded this testimony. (See id.).

Secondly, Dr. Davis's findings do not suggest Plaintiff suffered from disabling pain. (Tr. 157-58). Quite the contrary, Dr. Davis concluded that Plaintiff was able to sit and stand for long periods without pain, and that she could carry objects up to fifty pounds. (Tr. 21). The ALJ found these projections too optimistic, and lowered them to better suit a sedentary person with a limited range of motion such as Plaintiff. (Id.). By lowering these projections, the Magistrate Judge rightfully noted, "[t]he ALJ clearly did not ignore Dr. Davis's findings." (Doc. No. 20, at 28).

-8-

Furthermore, in Casey v. Sullivan, 987 F.2d 1230, 1234-35 (6th Cir. 1993), the Sixth Circuit held that a treating physician's opinion that a claimant was "unemployable" was not equivalent to an opinion that the claimant was disabled. Therefore, similar claims made by a consulting physician such as Dr. Clinton that Plaintiff was "unemployable" and "presents a severe hazard at a workplace" would not be indicative of a finding of disability. (Tr. 218). Plaintiff's reliance on Dr. Clinton's assessment is further undermined by the vocational expert's testimony, finding that there are available jobs in the state economy that Plaintiff would be qualified to perform. (Tr. 514-523). Therefore, Plaintiff's argument fails that Dr. Clinton's assessment be afforded greater weight.

Finally, the ALJ properly gave less deference to Dr. Tiller's evaluation, since an ALJ need not directly address every piece of evidence submitted, as long as his factual findings show that as a whole he has implicitly resolved the credibility of conflicting evidence. See Kornecky v. Comm'r of Soc. Sec., 167 Fed. Appx. 496, 507-98 (6th Cir. 2006). Dr. Tiller did not provide any additional information regarding the severity of Plaintiff's symptoms or her need for treatment that could not have been gleaned from the available evidence on the record. Dr. Tiller, a geneticist who saw Plaintiff once on referral, reported that Plaintiff "had a history of hip and knee pain, but now complains of multiple joint pain." (Tr. 196). Reporting Plaintiff's subjective complaints and recommending that Plaintiff consider treatment for chronic pain management do not constitute a medical diagnosis. Perhaps if there was evidence in the record that Plaintiff had sought such treatment, the ALJ might have concluded otherwise. However, that is not the case here, and it is not for this Court to decide if the ALJ could have reached an alternate conclusion. We need only determine that the ALJ's decision was supported by substantial evidence. The

ALJ has met that burden, and we **ADOPT** that portion of the Magistrate's Report.

**B. Plaintiff Objects to the Magistrate Judge's Conclusion that the ALJ Did Not Err in Rejecting the Testimony of the Plaintiff as Not Credible.**

Allegations of disabling pain cannot be rejected upon medical evidence alone. See Felisky, 35 F.3d 1027, 1039. If the ALJ rejects the claimant's complaints, he must clearly state his reasons for doing so. See Wines v. Comm'r of Soc. Sec., 268 F. Supp.2d 954, 958 (N.D. Ohio 2003) (citing Felisky, 35 F.3d at 1036); see also 20 CFR § 404.1529 (federal regulation for evaluating pain). Considering all relevant evidence, as required under § 404.1529, the ALJ found Plaintiff's subjective allegations of pain and functional limitations not to be credible because Plaintiff's documented range of activities was not consistent with her complaint. (Tr. 19).

Plaintiff argues that the ALJ and the Magistrate Judge exaggerated or mistakenly identified certain of Plaintiff's activities as "substantial daily activities." (Id.; Tr. 19). Yet Plaintiff has noted that she lives alone and is able to do some cooking and light housework. (Id., at 16-17). In addition, she testified that she spends up to five hours watching television each day. (Id., at 17). Plaintiff further testified that she is able to drive, work on scrap books, and regularly attends church. (Tr. 204, 206, 308). Although it is true that the ALJ misinterpreted the number of hours a day that Plaintiff is capable of cross-stitching without resting, the Magistrate Judge noted, and this Court agrees, that the totality of Plaintiff's activities demonstrates that she is capable of caring for herself and performing normal daily chores. (Doc. No 20, at 22 nn.16-17 and accompanying text).

Despite these concessions, Plaintiff argues that the ALJ improperly discredited her testimony and the testimony of her mother regarding Plaintiff's subjective complaints of pain.

-10-

(Doc. No. 16, at 15-18; Doc. No. 27, at 1). Plaintiff testified that she suffers ongoing pain from her ankle fracture, and that this pain makes walking and sitting difficult. (Doc. No. 16, at 15). She further stated that she suffers from depression and moves slowly as a result of EDS, and that her EDS also makes it difficult to type or cross-stitch for more than one hour at a time, after which she must rest for up to three hours. (Id., at 15-16). Plaintiff also stated that she suffers debilitating headaches up to three times each week that last up to two days. (Id., at 16). Her mother testified that Plaintiff has poor balance, experiences difficulty walking up and down stairs, and appears to be in pain when sitting or standing for short periods. (Id., at 18).

This Court agrees with the ALJ and the Magistrate Judge that much of Plaintiff's testimony conflicts with the objective evidence on the record, discussed above. Dr. Johnson, for example, stated that she "has made an excellent recovery from a relatively serious injury." (Tr. 119). Furthermore, Plaintiff testified she was unable to stand for longer than five minutes before feeling pain in her ankle, yet told Dr. Johnson should could stand for up to thirty minutes. (Tr. 117). Plaintiff also did not immediately take Dr. Johnson's medical advice to obtain orthopaedic shoes that would improve her unsteady gait and eliminate some of her pain, yet Dr. Johnson's records noted continued improvement in her recovery. (Tr. 116). This example, coupled with the objective evidence on the record, the ALJ's stated reasons for discrediting Plaintiff's testimony, and Plaintiff's inconsistent statements, demonstrate more than a scintilla of proof that Plaintiff's testimony was not credible.

This Court therefore finds there is substantial evidence to support the ALJ's finding that Plaintiff's testimony about her pain was not credible, and that Plaintiff's testimony was properly evaluated by the ALJ under this legal standard. Furthermore, the vocational expert's testimony

demonstrated, and the ALJ agreed, that there are a significant number of jobs that exist in the national economy which Plaintiff could perform, including assembler, general laborer, and inspector. (Tr. 24). This Court **AFFIRMS** the conclusion of the ALJ and **ADOPTS** the Report of the Magistrate Judge that Plaintiff was limited but not disabled by her impairments and retains an ability to perform work available in the economy.

## IV. CONCLUSION

The Court finds that the decision of the Commissioner was supported by substantial evidence and should be affirmed. For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's Report, and **DENIES** Plaintiff's Motion.

It is so ORDERED.

JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

-12-